■ In the Matter of the Adoption of SERGIO LL., an Infant. THOMAS NN. et al., Respondents; SERGIO MM., Appellant. (And Another Related Proceeding.) [703 NYS2d 310] —Carpinello, J. Appeal from an order of the Family Court of Schenectady County (Reilly, Jr., J.), entered January 22, 1998, which, *inter alia*, granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, for adoption of Sergio LL.

Petitioners are the foster parents of 10-year-old Sergio LL. and have been so since he was five months old; they seek to adopt him pursuant to a petition for adoption filed on October 17, 1995. The child's biological mother, currently an inmate in a State correctional facility, surrendered him for adoption in 1995. Respondent is the child's biological father and opposes the adoption. He has been incarcerated since September 29, 1988, serving a 15-year to life prison term. The earliest date upon which he will be eligible for parole is September 29, 2003.

Family Court conducted a hearing on the adoption petition and a subsequent amended petition for custody and visitation by respondent's mother.[1] Following the combined hearing, Family Court found that respondent's consent to the adoption was unnecessary because he failed to maintain substantial and continuous contact with the child. The court also dismissed the application by respondent's mother for custody and visitation and granted the petition for adoption, finding same to be in the child's best interest. Respondent's mother having failed to appeal the dismissal of her amended petition, the only issue properly before this Court is the propriety of Family Court's order finding respondent's consent to the adoption unnecessary pursuant to Domestic Relations Law § 111.

In order for the consent of a biological father to the adoption of an out-of-wedlock child to be required, Domestic Relations Law § 111 (1) (d) compels the father, as a threshold matter, to demonstrate that he has maintained a substantial and continuous or repeated relationship with the child by means of financial support and either monthly visitation, when physically and financially able to do so, or regular communication with the child or the child's caregiver (*see, Matter of Eugene MM.*, 132 AD2d 780). The record before this Court most assuredly demonstrates that respondent failed to meet any of the threshold criteria set by the statute.

Although respondent testified that he saw his son on three occasions between April 1989 and May 1989 while he was still

---

1. Respondent's mother lives in the Bronx, has only seen the child once during a chance meeting on the street when he was an infant and had no idea how old he was at the time of her hearing testimony.

in the county jail, the child's mother testified that she only brought him to see respondent on one occasion during this time. In any event, it is undisputed that respondent had *no* physical contact with the child since May 1989, a period of nearly six years prior to the instant adoption petition.[2] Furthermore, the last time respondent received any information about the child from his mother was in late 1993, a period of two years prior to the instant petition.

While respondent's incarceration undoubtedly made the task of establishing a relationship with his newborn son somewhat difficult, there were numerous steps that he could have taken, but did not, during the child's first 6½ years of life to maintain a substantial and continuous relationship with him while in prison or, at the very least, to maintain regular communication with him or his caregiver. Said differently, despite his status as a prison inmate, respondent certainly had viable options available to him to form a legal and emotional bond with his son. He chose not to avail himself of these options and thus his consent to the child's adoption was not required.

For example, despite telephone privileges at each of the State facilities in which he was incarcerated, respondent made no attempt to contact the child's mother while she herself was not in jail to inquire about the child's progress and well-being. He never even requested her telephone number while they were still in contact with each other. According to the child's mother, respondent never once requested that she bring the child to visit him. Moreover, despite knowledge that he could indeed seek visitation with the child while in prison, respondent never availed himself of this opportunity. He also never asked his family to attempt to make contact with the child or the child's mother on his behalf. Nor did he ever request that his family be permitted to visit with the child during his incarceration.

Despite knowledge that the child's mother was herself incarcerated in 1994, respondent made no effort at this time to ascertain who was caring for him in her absence. Rather, respondent simply assumed that he was being cared for by the mother's extended family. Yet, respondent never attempted to make any contact with these extended family members at this time to be sure that they were in fact caring for his son. Upon learning that the child's mother was incarcerated for a second time in 1995, he again made virtually no effort to ascertain the whereabouts of his child in her absence.

---

**2.** When questioned about how *he* planned to bring up the child given his incarceration, respondent tellingly replied that he expected the child's mother to work and raise him.

Simply stated, from the time the child was born until February 1995, when he was informed that the child was in the care and custody of the Schenectady County Department of Social Services and that he had foster parents who were willing to adopt him, respondent did nothing to establish his interest in assuming any responsibility of being a parent to him (*see, Matter of Raymond AA. v Doe*, 217 AD2d 757, 760, *lv denied* 87 NY2d 805), even an incarcerated parent. Under the circumstances, it is quite clear that respondent's belated interest in the child, who was 6½ years old when the adoption petition was filed, "was neither sufficiently prompt nor sufficiently substantial to require constitutional protection" (*Matter of John E. v Doe*, 164 AD2d 375, 382, *lv denied* 78 NY2d 853) and was nothing more than an effort to block the adoption (*see, id.,* at 381). Accordingly, his consent to the child's adoption was not required (*see, Matter of Eugene MM., supra*).

Respondent's remaining contentions have been reviewed and found to be without merit.

Cardona, P. J., Crew III, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.