In the Matter of the Adoption of MAXAMILLIAN, an Infant. BRETT K., Appellant, v BRIAN L., Respondent. [777 NYS2d 35]—

Order, Family Court, New York County (Sheldon Rand, J.), entered on or about August 4, 2003, which found that respondent father was a consent father for purposes of adoption and sua sponte ordered visitation, unanimously reversed, on the law

and the facts, without costs, the petition for an order approving the adoption of the child granted, and the order of visitation vacated.

Respondent is the biological father of Maxamillian (Max), who was born out of wedlock on July 27, 1996. Petitioner has been living with Max and his mother since 1998, when Max was two years old. In January 2002, petitioner married Max's mother and now seeks to adopt Max. During a hearing on the petition, the following facts were elicited.

Mother and child lived with respondent for the first $3^1/2$ months of the child's life. The mother paid half the rent for the apartment. The parties dispute whether respondent paid for some of the child's food and other living expenses. Mother and child moved out of respondent's apartment in November 1996 because respondent was verbally and physically abusive. In 1997, respondent regularly babysat for Max. The mother testified that with the exception of a $100 check for the child's third birthday, respondent did not offer any financial support for the child. Respondent testified that in 1997, he purchased diapers, food and toys for the child. However, respondent concedes that he has paid nothing since 1998.

Respondent's last formal visit with his son occurred when the child was 18 months old, and the last (accidental) contact between the two was in 1998, when Max was two years old. Respondent claimed that he was unable to see the child from the time Max was 18 months old because the mother was hostile towards him. But he offered no specific examples of thwarted attempts to visit with the child.

In 1999, respondent filed a petition for visitation, which was dismissed without prejudice due to his failure to respond to discovery requests and to appear in court. Respondent filed a second petition for visitation in 2001. A hearing was held on that petition, and respondent's witnesses attempted to demonstrate that the mother had frustrated respondent's attempts to see his son. The mother's witnesses countered with substantial evidence of domestic violence, including one incident which led to criminal charges, and a plea agreement which directed respondent to complete a 26-week anger management course. The mother testified that respondent's violence caused her to cease all non-court-ordered visitation between respondent and Max. At the conclusion of this 2002 hearing, the referee denied visitation, finding it contrary to the best interests of the child. The referee specifically articulated a concern that because of the history of violence, visitation would place the child at risk, even in a supervised setting.

At the conclusion of the June 24, 2003 hearing on the instant petition, the court determined that respondent met his burden of establishing that he was a consent father under Domestic Relations Law § 111 (1) (d), and, sua sponte, it ordered that visitation "should commence as soon as possible." This Court stayed the order of visitation pending appeal. We reverse, vacate that portion of the order directing visitation, and grant the petition authorizing Max's adoption.

Domestic Relations Law § 111 (1) (d) requires the consent of the biological father to an adoption of a child born out-of-wedlock and placed with the adoptive parents more than six months after birth, if the father can establish that he has maintained "substantial and continuous or repeated contact with the child." This must be evidenced by the payment of support and regular visitation or communication with the child. The record before this Court overwhelmingly establishes that respondent did not meet any of these statutory criteria (*Matter of Taylor R.*, 290 AD2d 830 [2002]; *Matter of Sergio LL.*, 269 AD2d 699 [2000]).

It is uncontested that respondent paid no support for his son from January 1998 through July 2003, that is, for 5½ years of the child's seven-year life (*Matter of James Q.*, 240 AD2d 841, 843 [1997]). Further, respondent's evidence of child support during the first 18 months of the child's life did not establish that he was a consistent or reliable source of support, and was insufficient to meet his burden of showing that he provided financial assistance in a fair and reasonable amount according to his means under Domestic Relations Law § 111 (1) (d) (i). Respondent has also failed to establish, as required by Domestic Relations Law § 111 (1) (d) (ii) and (iii), that since January 1998, he attempted to visit or maintain any regular contact with the child. Respondent concedes that he has not seen his son since January 1998, and he has not provided any objective proof to substantiate his claims as to phone calls and letters sent to the child (*Matter of Shaolin G.*, 277 AD2d 312 [2000], *lv denied* 96 NY2d 710 [2001]; *Matter of James Q., supra* at 842; *see also Matter of Baby Girl W.D.*, 251 AD2d 501 [1998]).

Accordingly, since respondent did not meet the threshold criteria which would require his consent to the adoption, we reverse the order appealed and grant the petition allowing for the adoption of the child (*Matter of Taylor R., supra*; *Matter of Tiffany Lynn G.*, 259 AD2d 616 [1999]).

We also vacate that aspect of the court's order sua sponte granting visitation. While the denial of visitation to a noncustodial parent is a drastic remedy, it has been ordered where "there

exist compelling reasons and substantial evidence showing that such visitation is detrimental to the child[ ]" (*Matter of Thaxton v Morro*, 222 AD2d 955, 956 [1995]). The instant record includes a referee's recommendation, after an extensive hearing, that visitation would not be in the best interests of the child due to the history of violent behavior on respondent's part, and we see no reason why that determination was disturbed by Family Court (*see DeJesus v Tinoco*, 267 AD2d 308 [1999]; *MacEwen v MacEwen*, 214 AD2d 572 [1995]). Concur—Nardelli, J.P., Mazzarelli, Saxe and Friedman, JJ.