In the Matter of VANESSA ANN G.-L. NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CALVIN L.L., Appellant, et al., Intervenors. [856 NYS2d 657]—

In a proceeding pursuant to Family Court Act article 10 to terminate the father's parental rights, the father appeals from an order of the Family Court, Nassau County (Zimmerman, J.), dated August 4, 2006, which granted the petitioner's motion for a determination that his consent to the adoption of the subject child was not required pursuant to Domestic Relations Law § 111 (2) (a).

Ordered that the order is reversed, on the law, without costs or disbursements, and the petitioner's motion for a determination that the father's consent to the adoption of the subject child was not required pursuant to Domestic Relations Law § 111 (2) (a) is denied.

The subject child Vanessa was born on October 19, 2002 with a positive toxicology for cocaine and was immediately removed from the birth mother's custody and placed with the foster parents, where she currently resides. However, when the child was initially placed with the foster parents, she was not placed for adoption. The goal at that time was to return the child to the birth mother.

At the time of the child's birth, the biological father had no contact with the birth mother and was unaware of the child's birth. On November 6, 2003 the father filed a petition to establish his paternity. On April 7, 2004 the Family Court granted his petition after blood tests established his paternity. The father commenced paying child support through a wage deduction order and commenced supervised visitation. On March 30, 2005 the father petitioned for custody. No hearing was held on that petition due to a dispute over whether the foster parents would be granted leave to intervene in the custody proceeding (*see Matter of Calvin L. v Nassau County Dept. of Social Servs.*, 43 AD3d 445 [2007]). On November 21, 2005 the petitioner commenced the instant proceeding to terminate the father's parental rights based upon permanent neglect. The petition alleged that the birth mother was willing to surrender the child for adoption on condition that the foster parents adopt her.

In December 2005 the birth mother died. Thereafter, in the proceeding to terminate the father's parental rights, the petitioner moved for a determination that the father's consent to the proposed adoption by the foster parents was not required pursuant to the provisions of Domestic Relations Law § 111 (2) (a). A hearing was held on that motion. At that hearing, the petitioner stipulated that, once paternity was established in April 2004 the father visited with the child and paid child support. Its contention was that the father's consent was not required because he failed to establish his paternity in the "crucial" first year of the child's life.

The petitioner limited its proof to the period between the child's birth and the father's commencement of a paternity proceeding on November 6, 2003. The father testified that in the two years since his paternity was established in April 2004, he paid child support, visited the child weekly, filed a custody petition, completed two parenting classes at the request of the petitioner, moved to a new apartment, and did everything else requested of him.

In the order appealed from, the Family Court found that the father's consent to the adoption was not required because the father did not establish his paternity until April 2004. The Family Court applied the law with respect to newborns placed for adoption, finding that *Matter of Robert O. v Russell K.* (80 NY2d 254 [1992]) provided the most guidance in determining the issues in this case. In *Matter of Robert O. v Russell K.* (80 NY2d 254 [1992]), the Court of Appeals held that the father of a nonmarital child placed for adoption at birth had a constitutional right to an "opportunity" to develop a relationship with

the child if the father promptly expressed a willingness to assume full custody.

However, in the instant case, the child was not placed for adoption at birth. Since the issue of adoption did not arise until the child was more than six months old, Domestic Relations Law § 111 (1) (d) should have been applied (*see Matter of Ericka Stacey B.*, 27 AD3d 245, 246 [2006]). Domestic Relations Law § 111 (1) (d) states that the consent of the father of a nonmarital child placed for adoption more than six months after birth is required if the father has: "maintained substantial and continuous or repeated contact with the child manifested by (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father's means and either (ii) the father's visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father's regular communication with the child or with the person or agency having the care or custody of the child." Pursuant to Domestic Relations Law § 111 (2) (a), which was cited by the petitioner as the determinative provision in the petition, a consent father may forfeit his rights by failure to visit with or communicate with the child for six months preceding the filing of an adoption petition (*see Matter of Baby Girl W.D.*, 251 AD2d 501 [1998]; *Matter of Joseph*, 227 AD2d 974 [1996]). At a hearing on the issue of abandonment, the evidence need not be limited to the six-month period immediately preceding the filing of an adoption petition. Evidence for a longer period which includes the period immediately preceding the filing of the adoption petition may be considered (*see Matter of Anonymous*, 20 AD3d 562, 563 [2005]; *Matter of Taylor O.P.*, 303 AD2d 1024 [2003]). Generally, however, more recent events are most relevant (*see Matter of Maxamillian*, 6 AD3d 349 [2004]).

In the instant case, the father testified that he regularly visited the child, paid child support, and did all that was requested of him. The petitioner did not refute that testimony. Rather, it stipulated that once paternity was established in April 2004, the father visited with the child and paid child support. This evidence established that the father met the standards for a consent father pursuant to Domestic Relations Law § 111 (1) (d). There was no evidence of abandonment pursuant to Domestic Relations Law § 111 (2) (a) (*see Matter of Devin F.*, 41 AD3d 1197 [2007]). Accordingly, the father's consent to the adoption is required. Skelos, J.P., Dillon, Leventhal and Chambers, JJ., concur.