*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 9, 2015                    519438
_____

In the Matter of BELLA FF., an
    Infant.

MARGARET GG. et al.,
                    Respondents;                MEMORANDUM AND ORDER

JAMES HH.,
                    Appellant.
_____

Calendar Date:   June 5, 2015

Before:   McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.

_____

        Eric K. Schillinger, East Greenbush, for appellant.

        Michelle I Rosien, Philmont, for respondents.

        Charles Thomas, Troy, attorney for the child.

_____

Egan Jr., J.

        Appeal from an order of the Family Court of Rensselaer
County (Cholakis, J.), entered June 26, 2014, which granted
petitioner's application, in a proceeding pursuant to Domestic
Relations Law article 7, to determine that respondent's consent
was not required for the adoption of his child.

        At all times relevant, respondent and the child's mother
were the unmarried parents of a daughter (born in 2009).  When
the child was four weeks old, the local social services agency
removed the child from the mother's home and placed the child
with petitioner Margaret GG., the child's maternal aunt
(hereinafter the aunt), in the home that she shared with her then

boyfriend/now husband, petitioner Stanley GG. The aunt subsequently was awarded guardianship of the child[1] and, following the mother's death in 2013, petitioners filed a petition and an amended petition seeking to adopt the child. In so doing, they alleged that respondent's consent was not required due to his lack of contact with the child. A hearing was held in June 2014, at the conclusion of which Family Court determined that respondent's consent was not required under Domestic Relations Law § 111 (1) (d). Respondent now appeals.[2]

We affirm. "A biological father's consent to adopt a child over six months old who was born out of wedlock is required only if the father 'maintained substantial and continuous contact with the child as manifested by' payment of reasonable child support and either monthly visitation or regular communication with the child or custodian" (Matter of John Q. v Erica R., 104 AD3d 1097, 1098 [2013], quoting Domestic Relations Law § 111 [1] [d]; see Matter of Asia ZZ. [Henry A.–Jason V.], 97 AD3d 865, 865-866 [2012]; Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d 1362, 1362 [2012], lv denied 19 NY3d 807 [2012]).[3] As the statute makes clear, Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological father – satisfaction of both the support and contact/communication provisions – and the

---

[1]  Respondent testified that he did not oppose awarding guardianship of the child to the aunt, as he believed that such award would be temporary.

[2]  Counsel for petitioners represented at oral argument that respondent did not seek a stay pending appeal and, during the pendency thereof, the child was in fact adopted by petitioners.

[3]  Although the child was placed in petitioners' home when she was four weeks old, the petition and amended petition for adoption were not filed until the child was nearly five years old. Under these circumstances, this matter is governed by the provisions of Domestic Relations Law § 111 (1) (d) (see Matter of Vanessa Ann G.–L., 50 AD3d 1036, 1038 [2008], lv dismissed 11 NY3d 893 [2008]; compare Domestic Relations Law § 111 [1] [d], with Domestic Relations Law § 111 [1] [e]).

father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required (see e.g. Matter of Makia R.J. [Michael A.J.], 128 AD3d 1540, 1540 [2015]; Matter of Asia ZZ. [Henry A.–Jason V.], 97 AD3d at 866). Notably, diligent efforts "to encourage the father to perform the acts" required by the statute are not mandated (Domestic Relations Law § 111 [1] [d]).

Here, the record does not reflect that respondent provided any financial support for his daughter and, contrary to respondent's assertion, we find his proffered excuses in this regard to be woefully inadequate. Although respondent indeed was incarcerated for a large portion of the time between October 2010 and April 2014, the case law makes clear that, "absent a showing of insufficient income or resources, the fact that respondent was in prison does not relieve him from his responsibility to provide some financial support to the extent of his ability" (Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d at 1363; see Matter of Maurice N. [Carlos O.], 128 AD3d 1117, 1118 [2015]; Matter of John Q. v Erica R., 104 AD3d at 1099). Similarly, neither the absence of a court order directing respondent to pay child support nor his apparent lack of postrelease employment is sufficient to excuse his obligation under the statute — particularly where he otherwise fails to prove "that he was unable to pay anything to support his child" (Matter of John Q. v Erica R., 104 AD3d at 1099 [emphasis added]).[4] Accordingly, Family Court correctly concluded that respondent failed to satisfy the support aspect of Domestic Relations Law § 111 (1) (d).

We reach a similar conclusion as to the contact element of the statute. Respondent testified that, after his paternity was established, he participated in supervised weekly visits with the child from the time that she was six months old until some point after her first birthday. Respondent admitted, however, that he

---

[4] Respondent testified at the hearing that he was receiving Supplemental Security Income and Social Security Disability benefits, although it is unclear when such benefits commenced.

last saw his child on October 23, 2010 – shortly before he entered state prison – and the aunt testified that she never received any cards or letters for the child from respondent. Although respondent insisted that he could not contact petitioners or the child because he lost the aunt's phone number, did not have petitioners' address and the local social services agency refused to provide him with such information, the record reflects that respondent failed to make even a minimal effort to locate petitioners by, for example, looking in the local phone book or asking a member of his family to conduct an Internet search (see Matter of John Q. v Erica R., 104 AD3d at 1099; Matter of Asia ZZ. [Henry A.–Jason V.], 97 AD3d at 866). Similarly, while respondent testified that the local social services agency informed him – prior to his October 2010 incarceration – that he would need to file a petition in Family Court in order to obtain visitation with or information regarding his child, respondent admitted that he did not do so until October 2013. Respondent's "incarceration did not 'excuse his failure to maintain substantial and continuous or repeated contact with [his] child'" (Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d at 1363, quoting Matter of Keyanna AA., 35 AD3d 1079, 1081 [2006]; see Matter of Kevina G. [Kevin C.], 124 AD3d 889, 890 [2015], lv denied 25 NY3d 904 [2015]; Matter of John Q. v Erica R., 104 AD3d at 1099), and the record as a whole fails to reveal any discernible reason for respondent's shortcomings in this regard. Simply put, inasmuch as respondent never paid child support, did not participate in visits with his child after October 2010, waited until October 2013 to file a petition seeking visitation and/or otherwise failed to maintain contact with the child through cards, letters or gifts, we find ample support for the conclusion that respondent did not satisfy the statutory criteria. Hence, respondent's consent to the proposed adoption was not required (see Matter of Angelina K. [Eliza W.–Michael K.], 105 AD3d 1310, 1311-1312 [2015], lv denied 21 NY3d 860 [2013]; Matter of John O. v Erica R., 104 AD3d at 1098-1099; Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d at 1363-1364; Matter of Ethan S. [Tarra C.–Jason S.], 85 AD3d 1599, 1599-1560 [2011], lv denied 17 NY3d 711 [2011]).

As a final matter, we find no merit to respondent's claim that he received ineffective assistance of counsel – particularly

with respect to counsel's asserted failure to elicit proof of respondent's alleged indigency.  Respondent's oldest daughter testified that she "brought [respondent] money at jail," and respondent testified that he was receiving certain government benefits – although, as noted previously, the record is silent as to when such benefits commenced.  Under these circumstances, trial counsel, despite the statutory requirements, may well have made a tactical decision not to dwell upon respondent's finances – particularly if respondent had no viable explanation for his failure to provide even a meager level of support (see e.g. Matter of Robinson v Bick, 123 AD3d 1242, 1242-1243 [2014]; Matter of Elizabeth HH. v Richard II., 75 AD3d 670, 670-671 [2010]; Matter of Hurlburt v Behr, 70 AD3d 1266, 1267-1268 [2010], lv dismissed 15 NY3d 943 [2010]).  "[I]t is not the role of this Court to second-guess counsel's trial strategy or tactics" (Matter of Christopher W., 42 AD3d 692, 693 [2007]), and, even assuming that counsel's performance on this point was deficient, we cannot say, based upon our review of the record as a whole, that respondent was deprived of meaningful representation.  Notably, trial counsel elicited detailed testimony from respondent as to the latter's explanation for not participating in, seeking visitation with or otherwise maintaining contact with his child during the relevant time period, cross-examined petitioners' witnesses and made appropriate objections throughout the course of the hearing (see id. at 693-694).  Respondent's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court