*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                    520243
_____

In the Matter of YSABEL M., an
    Infant.

YSDIRABELLINNA L. et al.,
                    Respondents;

ELVIS M.,
                    Appellant,
                    et al.,
                    Respondent.

(Proceeding No. 1.)                    MEMORANDUM AND ORDER
_____

In the Matter of ELVIS M.,
                    Appellant,

        v

YSDIRABELLINNA L. et al.,
                    Respondents.

(Proceeding No. 2.)
_____


Calendar Date:  February 9, 2016

Before:  Peters, P.J., McCarthy, Egan Jr. and Lynch, JJ.

                    _____


        Jane M. Bloom, Monticello, for appellant.

        Ricciani & Jose, LLP, Monticello (E. Danielle Jose-Decker
of counsel), for respondents.

        Isabelle Rawich, South Fallsburg, attorney for the child.

                    _____

Egan Jr., J.

Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered November 21, 2014, which, among other things, granted petitioners' application, in proceeding No. 1 pursuant to Domestic Relations Law article 7, to determine that the consent of respondent Elvis M. was not required for the adoption of the child.

At all times relevant, Elvis M. (hereinafter the father) and the child's mother were the unmarried parents of a daughter (born in 2002). Ysdirabellinna L. (hereinafter the aunt) and Richard L. (hereinafter the uncle) are the child's maternal aunt and uncle. In April 2014, the aunt and uncle, who apparently obtained custody of the child upon default in March 2005, commenced proceeding No. 1 seeking to adopt the child and, in the context thereof, alleged that the father's consent was not required. The father, who has been incarcerated in state prison since 2008, opposed the proposed adoption and thereafter commenced proceeding No. 2 seeking visitation. Following a fact-finding hearing and a Lincoln hearing, Family Court granted the adoption petition finding, among other things, that the father's consent was not required and that it was in the child's best interests for the adoption to proceed. Family Court also dismissed the father's petition seeking visitation. This appeal by the father ensued.[1]

We affirm. As this Court recently summarized, "[a] biological father's consent to adopt a child over six months old who was born out of wedlock is required only if the father maintained substantial and continuous contact with the child as manifested by payment of reasonable child support and either monthly visitation or regular communication with the child or custodian. As the statute makes clear, Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological

---

[1] The father has not briefed the denial of his request for visitation and, as such, we deem any argument in this regard to be abandoned (see Matter of Owens v Chamorro, 114 AD3d 1037, 1038 n 1 [2014]).

father – satisfaction of both the support and contact/communication provisions – and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Bella FF. [Margaret GG.–James HH.], 130 AD3d 1187, 1187-1188 [2015] [internal quotation marks, footnote and citations omitted]).

As to the support element, we note at the outset that, "absent a showing of insufficient income or resources, the fact that [the father] was in prison does not relieve him from his responsibility to provide some financial support to the extent of his ability" (Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d 1362, 1363 [2012], lv denied 19 NY3d 807 [2012]; see Matter of Hayden II. [Renee II.–Devan JJ.], 135 AD3d 997, 998-999 [2016]; Matter of Maurice N. [Carlos O.], 128 AD3d 1117, 1118 [2015]). In this regard, the father testified that he sent money to the child for her birthday and "at various times" over the years, including an occasion in 2014 when he sent the child – through her mother – approximately $100. When questioned as to the manner in which (given his incarceration) he transmitted such funds, the father clarified that he "had [his] family send money to [the child]." The father's vague and otherwise unsubstantiated testimony on this point was flatly contradicted by the aunt, who testified that she did not receive any financial support from the father after the child came to live with her in March 2005. Under these circumstances, Family Court properly found that the father failed to satisfy the support element of Domestic Relations Law § 111 (1) (d) (see Matter of Bella FF. [Margaret GG.–James HH.], 130 AD3d at 1188; Matter of Dakiem M. [Demetrius O.–Dakiem N.], 94 AD3d at 1363).

We reach a similar conclusion with regard to the contact element of the statute. The father, by his own admission, had not seen the child since 2007 (at which time the child was five years old) and, even crediting his testimony on this point, had only spoken with the child on the telephone once in or about July 2013. Although the father insisted that he periodically sent cards and letters to the child's mother to, in turn, give to the child, as well as gifts for the child's birthday and Christmas each year, the aunt testified that she never received any cards,

letters, emails, social network requests, packages or gifts for the child from the father.[2]  The aunt similarly stated that the father never contacted her requesting any information regarding the child.  While the father testified that he did not have an address for the aunt and the uncle, the father admitted that he had been to their residence in 2004, and the aunt testified that she and her husband had lived at the same address for more than 20 years, that both her address and phone number were listed in the local phone book and that she had made no attempt to keep such information confidential.  Although the father insisted that he could not use the Internet – while incarcerated – to locate the aunt and the uncle, he acknowledged that he had access to phone books in prison and offered no persuasive explanation as to why he did not ask a friend or family member to assist him in obtaining the aunt and uncle's address (see Matter of Bella FF. [Margaret GG.–James HH.], 130 AD3d at 1188-1189).  More to the point, the father acknowledged that the child's mother "[i]nadvertently" provided him with the aunt and uncle's address in November 2013 (when she shared a copy of the child's school report card); still, the father made no effort to contact the aunt, the uncle or the child until after the adoption petition was filed.[3]

The case law makes clear that the father's "incarceration [does] not excuse his failure to maintain substantial and continuous or repeated contact with his child" (id. at 1189 [internal quotation marks, brackets and citations omitted]; see Matter of Maurice N. [Carlos O.], 128 AD3d at 1118), and the record reflects that the father's efforts in this regard were –

---

[2]  The father testified that he received correspondence from the child – through the mother – on "[a] good five or six occasions" over the years.

[3]  According to the father, he was concerned that there might be an order of protection prohibiting him from such contact (although he admittedly had no notice to that effect) and, in any event, he apparently elected not to reach out to the aunt and the uncle "[o]ut of respect for them."

at best — insubstantial and sporadic.  Accordingly, inasmuch as the father failed to satisfy the criteria set forth in Domestic Relations Law § 111 (1) (d), Family Court correctly concluded that his consent to the proposed adoption was not required. Further, in light of our conclusion in this regard, we need not consider the aunt and uncle's alternative ground for affirming Family Court's order — namely, that the father abandoned his child.

The father's ineffective assistance of counsel claim does not warrant extended discussion.  To the extent that the father faults counsel for failing to tender sufficient proof of his financial resources (or lack thereof), counsel "may well have made a tactical decision not to dwell upon [the father's] finances — particularly if [the father] had no viable explanation for his failure to provide" support beyond the intermittent and unspecified sums of money purportedly sent to the child by members of his family (Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d at 1189-1190).  As for counsel's failure to call the mother as a witness, it is well settled that "the failure to call particular witnesses . . . does not necessarily constitute ineffective assistance of counsel" (Matter of Julian P. [Colleen Q.], 129 AD3d 1222, 1224 [2015] [internal quotation marks, brackets and citation omitted]) — particularly where the record fails to reflect that the desired testimony would have been favorable (see Matter of James P., 17 AD3d 733, 735 [2005]).  In short, as our review of the record reveals that the father was afforded meaningful representation, we are satisfied that he received the effective assistance of counsel.

Peters, P.J., McCarthy and Lynch, JJ., concur.

ORDERED that the order is affirmed, without costs.



ENTER:

Robert D. Mayberger
Clerk of the Court