Matter of Russell J. v Delaware County Dept. of Social Servs. (2019 NY Slip Op 02389)





Matter of Russell J. v Delaware County Dept. of Social Servs.


2019 NY Slip Op 02389


Decided on March 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 28, 2019

525038

[*1]In the Matter of RUSSELL J., Appellant,
v
DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent, et al., Respondent. (Proceeding No. 1.)
In the Matter of ILIANA K., Alleged to be a Permanently Neglected and Abandoned Child. DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RUSSELL J., Appellant. (Proceeding No. 2.)

Calendar Date: February 14, 2019

Before: Clark, J.P., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Teresa C. Mulliken, Harpersfield, for appellant.
Amy B. Merklen, Delaware County Department of Social Services, Delhi, for Delaware County Department of Social Services, respondent.
Larisa Obolensky, Delhi, attorney for the child.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from an order of the Family Court of Delaware County (Northrup Jr., J.), entered May 4, 2017, which, among other things, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of his child.
Russell J. (hereinafter the father) is the unwed father of a daughter (born in 2015) who was removed from her mother the day after she was born and placed in the care and custody of the Delaware County Department of Social Services (hereinafter DSS). DSS filed a neglect petition against the mother and held permanency hearings every six months after the child's removal, resulting in the child's continued placement with DSS. In March 2016, a DNA test conducted during a criminal investigation revealed that the father was the child's biological father. In May 2016, the father was arrested and incarcerated for raping the mother, who was underage when she conceived the child. A DSS caseworker visited the father at the jail, discussed the child and advised him to contact DSS upon his release. The father did not contact DSS upon his release in July 2016, nor at any time before he was reincarcerated in November 2016 on new charges. In satisfaction of the rape charge, he eventually pleaded guilty to endangering the welfare of a child.
In December 2016, while he was incarcerated, the father filed a petition seeking custody of his child. Approximately one week later, DSS filed a petition seeking to terminate his parental rights on the grounds of permanent neglect and abandonment (see Social Services Law § 384-b [5], [7])[FN1]. Following a hearing, Family Court determined that DSS had not proven permanent neglect because it had failed to make reasonable efforts to encourage the parent-child relationship. As for the abandonment ground, the court addressed the threshold issue of whether the father's consent was required for an adoption and, concluding that it was not, dismissed the petition as unnecessary. The court dismissed the father's custody petition after determining that it was in the child's best interests not to be in his custody. The father appeals.
As the father never argued in Family Court that DSS lacked legal authority to maintain custody of his child, he is precluded from raising this argument for the first time on appeal (see Morell v Morell, 277 AD2d 780, 782 [2000]). In any event, DSS obtained custody of the child through a court order after removing the child from the mother's custody. DSS's custody was legally extended every six months through permanency orders. In August 2016, the court issued an order adding the father as an interested party to the neglect proceedings concerning the mother. Thus, the father had ample time to complain to Family Court if he believed that DSS had no legal right to custody of his child, but he failed to do so.
Although the father argues that the issue of whether he was a consent parent was not properly before Family Court, we have characterized that as a threshold issue when a petition seeks to terminate parental rights based on alleged abandonment (see Matter of William B., 47 AD3d 983, 984 [2008], lv denied 11 NY3d 702 [2008]; see also Social Services Law § 384-b [4] [b]; Matter of Colby II. [Chalmers JJ.], 140 AD3d 1484, 1484 [2016]; Matter of Spencer Isaiah R. [Spencer R.], 78 AD3d 561, 561 [2010]). "A biological father's consent to adopt a child over six months old who was born out of wedlock is required only if that father 'maintained substantial and continuous contact with the child as manifested by' payment of reasonable child support and either monthly visitation or regular communication with the child or custodian" (Matter of John Q. v Erica R., 104 AD3d 1097, 1098 [2013], quoting Domestic Relations Law § 111 [1] [d]; see Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d 1187, 1187 [2015]; Matter of Dakiem M. [Demetrius O.—Dakiem N.], 94 AD3d 1362, 1362 [2012], lv denied 19 NY3d 807 [2012]). Incarceration does not obviate a father's obligation to maintain regular contact with the child (see Matter of Ysabel M. [Ysdirabellinna L.—Elvis M.], 137 AD3d 1502, 1505 [2016]; Matter of John Q. v Erica R., 104 AD3d at 1098; Matter of Dakiem M. [Demetrius O.—Dakiem N.], 94 AD3d at 1363). "Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological father — satisfaction of both the support and contact/communication provisions — and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Ysabel M. [Ysdirabellinna L.—Elvis M.], 137 AD3d at 1503 [internal quotation marks, emphasis and citations omitted]). DSS is not mandated to engage in "diligent efforts 'to encourage the father to perform the acts' required by the statute" (Matter of Bella FF. [*2][Margaret GG.—James HH.], 130 AD3d at 1188, quoting Domestic Relations Law § 111 [1] [d]; see Matter of William B., 47 AD3d at 985-986).
At the time of the hearing, the child was 18 months old. The record does not disclose that the father had ever paid anything toward her support. He had never met the child, called her, nor sent her a card, letter or gift. Despite his awareness that the child was in foster care, the father never contacted the foster parents or requested their phone number or address. He also failed to contact DSS, even after being instructed to do so. DSS employees did not encourage the father's involvement with the child, but neither did they discourage it. Due to the father's complete failure to support the child, visit the child or communicate with her or her custodians, Family Court properly determined that the father's consent was not required for adoption, notwithstanding him filing a custody petition a week prior to DSS filing its petition (see Domestic Relations Law § 111 [1] [d]). As his consent was not required for adoption, the court properly dismissed DSS's petition to terminate his parental rights (see Matter of Christy R., 183 AD2d 434, 434 [1992]).
Family Court properly dismissed the father's custody petition. "In a custody dispute between a parent and a nonparent, the parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Rumpff v Schorpp, 133 AD3d 1109, 1110 [2015] [internal quotation marks and citations omitted]; see Matter of Liz WW. v Shakeria XX., 128 AD3d 1118, 1120 [2015], lv dismissed 25 NY3d 1195 [2015]). If the nonparent meets the burden of establishing extraordinary circumstances to overcome the parent's superior rights, the court will then address the child's best interests (see Matter of Nevaeh MM. [Sheri MM.—Charles MM.], 158 AD3d 1001, 1002-1003 [2018]; Matter of Rumpff v Schorpp, 133 AD3d at 1110; Matter of Liz WW. v Shakeria XX., 128 AD3d at 1120; Matter of Melody J. v Clinton County Dept. of Social Servs., 72 AD3d 1359, 1360 [2010], lv denied 15 NY3d 703 [2010]). DSS established extraordinary circumstances through proof that the child had been in foster care since she was one day old and had never met the father. Having already determined that the child could be adopted without his consent, the record supports Family Court's determination that the child's best interests would not be served by granting custody to the father, who is a stranger to her. Thus, the court did not err in dismissing his custody petition.
Clark, J.P., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother executed a judicial surrender of her parental rights to the child.