Matter of Lillyanna A. (William ZZ.) (2020 NY Slip Op 00333)





Matter of Lillyanna A. (William ZZ.)


2020 NY Slip Op 00333


Decided on January 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 16, 2020

526750

[*1]In the Matter of Lillyanna A., an Infant. William ZZ. et al., Respondents; John B., Appellant, et al., Respondent.

Calendar Date: December 17, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Reynolds Fitzgerald, JJ.


John A. Cirando, Syracuse, for appellant.
Marian J. Cerio, Canastota, for William ZZ. and another, respondents.
William L. Koslosky, Utica, attorney for the child.



Mulvey, J.
Appeal from an order of the Family Court of Madison County (McDermott, J.), entered February 28, 2018, which granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of his child.
Respondent John B. (hereinafter the father) is the biological father of the subject child (born in 2013) and was never married to the mother. Petitioners, who are the child's maternal grandmother and her husband, have had sole custody of the child since less than one month after her birth. In early 2015, the father obtained an order granting him supervised visitation for two hours per week. In 2017, petitioners filed a petition to adopt the child and sought a determination that the father's consent was not required.[FN1] Following a fact-finding hearing, Family Court found that his consent was not required. The father appeals.
Pursuant to Domestic Relations Law § 111 (1) (d), a biological father's consent is required for someone to adopt his child when the child was "born out-of-wedlock . . ., but only if such father shall have maintained substantial and continuous or repeated contact with the child." Substantial and continuous or repeated contact with the child must be evinced by (1) financial support by the father of a fair and reasonable sum according to his means and (2) either visiting the child at least monthly when physically and financially able to do so or, if physically or financially unable to visit monthly, by regular communication with the child or the person having custody of the child (see Domestic Relations Law § 111 [1] [d]). "As the statute makes clear, Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological father — satisfaction of both the support and contact/communication provisions — and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Bella FF. [Margaret GG.-James HH.], 130 AD3d 1187, 1187-1188 [2015] [citations omitted]; see Matter of Russell J. v Delaware County Dept. of Social Servs., 170 AD3d 1433, 1434-1435 [2019]). Absent a showing of insufficient income or resources, a father is not excused from his obligation to provide his child with some financial support — to the extent of his ability — by the fact that he was incarcerated, a lack of postrelease employment, nor the absence of a court order directing him to pay child support, "particularly where he otherwise fails to prove 'that he was unable to pay anything to support his child'" (Matter of Bella FF. [Margaret GG.-James HH.], 130 AD3d at 1188, quoting Matter of John Q. v Erica R., 104 AD3d 1097, 1099 [2013]; see Matter of Dakiem M. [Demetrius O.-Dakiem N.], 94 AD3d 1362, 1363 [2012], lv denied 19 NY3d 807 [2012]).
The father was incarcerated at various times. He testified that he attempted to obtain work but was only able to secure employment for approximately three weeks during the entire time that he was at liberty. He never provided any financial support for the child during her entire life. Family Court noted that the father appeared able-bodied and he did not present any documentation to support his assertion that he searched for employment, and he testified that he would not be inclined to pay child support to petitioners because he did not trust that they would use the money for the child's benefit. We agree with Family Court that the father's periodic incarceration and his lack of meaningful employment fail to demonstrate his inability to ever pay anything towards the child's support (see Matter of Bella FF. [Margaret GG.-James HH.], 130 AD3d at 1188; Matter of John Q. v Erica R., 104 AD3d at 1099; Matter of Dakiem M. [Demetrius O.-Dakiem N.], 94 AD3d at 1363).
Although we could end our inquiry based solely on the father's failure to establish the support requirement, we also find that he failed to maintain contact or communication with the child. The father's incarceration physically prevented him from visiting the child at certain times, and he testified that the cost of the court-ordered visitation supervisor prevented him from attending other visits. In the year preceding the filing of the adoption petition, he visited at most three times, possibly only once. Despite conflicting testimony regarding whether the father had petitioners' telephone number, he had their address and, although he wrote letters to them and the child while he was incarcerated, he did not write any letters or send any cards when he was at liberty. He also did not inform petitioners when he was released from prison or jail, or of his address at any time when he was not incarcerated. The father asserted that he attempted to promote his relationship with the child by filing petitions for unsupervised visitation, but the record demonstrates that he either withdrew the petitions or they were dismissed based on his nonappearance, without any appeal. Under the circumstances, the father's consent to the adoption was not required because, although he was obligated to satisfy both the support and contact/communication provisions of Domestic Relations Law § 111 (1) (d), he did not satisfy either (see Matter of Bella FF. [Margaret GG.-James HH.], 130 AD3d at 1189).
Finally, we cannot say that Family Court abused its discretion by not appointing an attorney for the child, considering that such an appointment was not mandatory, no request for such an appointment was made and the record lacks proof of any demonstrable prejudice to any party or the child as a result of the court not making an appointment (see Family Ct Act § 249 [a]; Matter of Joshua FF., 11 AD3d 738, 740 [2004], lv denied 4 NY3d 703 [2005]; Matter of Joshua, 216 AD2d 749, 752 [1995], lv denied 86 NY2d 709 [1995]; see also Matter of Keen v Stephens, 114 AD3d 1029, 1032 [2014]).
Lynch, J.P., Clark, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Based on the mother's default, Family Court dispensed with her consent.