Matter of Raheem A. (Judith B.) (2020 NY Slip Op 07254)





Matter of Raheem A. (Judith B.)


2020 NY Slip Op 07254


Decided on December 3, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 3, 2020

528680

[*1]In the Matter of Raheem A., Appellant,
Judith B., Respondent, and Patricia C., Respondent. (Proceeding No. 1.)
In the Matter of Avangeline B., an Infant. Patricia C., Respondent; Raheem A., Appellant, et al., Respondent. (Proceeding No. 2.)

Calendar Date: October 13, 2020

Before: Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ.


Michelle I. Rosien, Philmont, for appellant.
Copps Dipaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for Patricia C., respondent.
Christopher J. Obstarczyk, Latham, attorney for the child.



Pritzker, J.
Appeal from an order of the Family Court of Albany County (Maney, J.), entered January 31, 2019, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to [*2]Domestic Relations Law article 7, to determine that respondent Raheem A.'s consent was not required for the adoption of his child.
Raheem A. (hereinafter the father) and respondent Judith B. are the unwed biological parents of a daughter (born in 2013). Pursuant to a January 2015 order entered on consent, Patricia C. was awarded sole legal and physical custody of the child. At that time, the father was incarcerated and the order directed Patricia C. to keep the father apprised of the child's medical and social development and provide the father with a picture of the child "at quarterly intervals." The order also permitted the father to send the child cards, letters and gifts. Upon his release from incarceration, the father filed a modification petition seeking visitation with the child. In December 2015, the court granted the father's petition by awarding him supervised parenting time, with no additional restrictions. In 2016, the father became incarcerated again and, upon his release in November 2017, he commenced the first of these proceedings, seeking to modify the 2015 custody order so that he could resume visitation with the child. Patricia C. then commenced the second of these proceedings to adopt the subject child and seeking, among other things, a determination that the father's consent was not required for the adoption. Following a fact-finding hearing, Family Court ultimately dismissed the father's petition based upon his failure to establish a change in circumstances. The court also determined that his consent to the adoption was not required because he failed to show that he sufficiently provided financial support for the child and that he maintained regular communication with the child. The father appeals, arguing only that the court erred in determining that his consent to the adoption was not required.
Domestic Relations Law § 111 (1) (d) requires a biological father's consent for someone to adopt his child when the child was "born out-of-wedlock . . ., but only if such father shall have maintained substantial and continuous or repeated contact with the child." Such contact "must be evinced by (1) financial support by the father of a fair and reasonable sum according to his means and (2) either visiting the child at least monthly when physically and financially able to do so or, if physically or financially unable to visit monthly, by regular communication with the child or the person having custody of the child" (Matter of Lillyanna A. [William ZZ.—John B.], 179 AD3d 1325, 1326 [2020], lv denied 35 NY3d 908 [2020]). "As the statute makes clear, Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological father — satisfaction of both the support and contact/communication provisions — and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Bella FF. [Margaret GG.—James HH.]), 130 AD3d 1187, 1187-1188 [2015] [citations omitted]; accord Matter of Lillyanna A. [William ZZ.—John B.], 179 AD3d at 1326).
The testimony at the fact-finding hearing established that when the child was born, in September 2013, the father was incarcerated and was not released until September 2015. The child has lived with Patricia C. since she was four months old. While incarcerated, the father filed a paternity petition that ultimately resulted in an order of filiation declaring him to be the father of the child and, in January 2015, an order was entered that permitted the father to send the child cards, gifts and letters. Patricia C. testified that the father did not send cards, gifts or letters to the child, but the father testified that he did send letters to Patricia C.'s address. Approximately two months after the father's release [*3]from incarceration, he filed a petition seeking visitation, which Family Court awarded in a December 2015 order. Pursuant to the order, Patricia C., or another party deemed appropriate by Patricia C., was to supervise visitation at times and places as the parties agreed. At the time, the father lived approximately 50 miles from where Patricia C. resides. The father was again incarcerated in July 2016. Patricia C. testified that, prior to being reincarcerated, the father had four or five visits with the child and that she did not limit the number of visits that the father could have. In contrast, the father testified that he had 10 visits with the child during that time. Both Patricia C. and the father testified that he canceled scheduled visits, usually because of transportation issues.
Testimony further established that, between July 2016 — when the father was reincarcerated — and November 2017 — when he was released, the father did not have any contact with the child or Patricia C. The father's explanation for the lack of contact was that he did not have contact information for Patricia C. while incarcerated, despite admitting to having known her address when filing prior petitions, including those filed while he was incarcerated. Patricia C. testified that she had neither moved nor changed her telephone number. The father testified that he wrote to Family Court in March 2017, eight months after being reincarcerated, asking to be sent prior orders and petitions so that he could find out Patricia C.'s address.[FN1] The father testified that he received no response and that he did not follow up the request with a telephone call. He also testified that he asked counselors at the prison for assistance in obtaining contact information for Patricia C. The father admitted that he did not contact his attorney for assistance, nor did he contact the attorney for the child, despite having contacted her by letter when he was incarcerated previously. The father also testified that he sent letters to family members asking for assistance in finding Patricia C.'s address, but that they did not respond. A few weeks after he was released from incarceration the second time, the father filed a modification petition seeking to reestablish contact with the child. He also testified that, after he was released from incarceration, he found a telephone number on the Internet that he believed to be that of Patricia C. and he called it and left a voicemail. He did not attempt to call her again. Patricia C. testified that she received a voicemail from the father, but that it was too "garbled" when he recited his telephone number. She further testified that she attempted to call the father back using his old cellular phone number, but it did not work.
Here, the evidence failed to demonstrate that the father either visited the child at least monthly when physically and financially able to do so or that he had regular communication with the child or Patricia C. (see Matter of Lillyanna A. [William ZZ.—John B.], 179 AD3d at 1327; Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d at 1189). Although there are testimonial inconsistencies regarding the exact number of visits between the father and the child, Family Court credited Patricia C.'s testimony, a determination with which we accord deference (see Matter of Blake I. [Richard H.—Neimiah I.], 136 AD3d 1190, 1191 [2016]; Matter of Dakiem M. [Demetrius O.—Dakiem N.], 94 AD3d 1362, 1362-1363 [2012], lv denied 19 NY3d 807 [2012]). The record reveals that, at the time of the fact-finding hearing, the child was five years old and had visited with her father four or five times two years prior. The court also found that, despite being permitted to do so, the father did not send letters, cards or gifts or maintain contact with Patricia C. while he was incarcerated. Additionally, the father's [*4]"incarceration did not excuse his failure to maintain substantial and continuous or repeated contact with his child" (Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d at 1189 [internal quotation marks, brackets and citations omitted]; see Matter of Ysabel M. [Ysdirabellinna L.—Elvis M.], 137 AD3d 1502, 1505 [2016]; Matter of Kevina G. [Kevin C.], 124 AD3d 889, 890 [2015], lv denied 25 NY3d 904 [2015]). Moreover, although he testified to his attempts to find contact information for Patricia C. while incarcerated, given that he neglected to follow up on his Family Court record request or contact his prior attorney who had access to the case file, the father "failed to demonstrate that anyone interfered with his attempts or that he availed himself of viable options to do so while incarcerated" (Matter of Keyanna AA., 35 AD3d 1079, 1081 [2006]). Thus, under these circumstances, Family Court correctly found that the father's consent to the adoption was not required (see Domestic Relations Law § 111 [1] [d]; Matter of Lillyanna A. [William ZZ.—John B.], 179 AD3d at 1327; Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d at 1189). In light of this determination, the father's remaining contentions have been rendered academic.
Egan Jr., J.P., Mulvey and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: This letter was admitted into evidence.