Matter of Gabriella U. (Amanda T.--James S.) (2021 NY Slip Op 02581)





Matter of Gabriella U. (Amanda T.--James S.)


2021 NY Slip Op 02581


Decided on April 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 29, 2021

531333
[*1]In the Matter of Gabriella U., an Infant. Amanda T., Respondent, et al., Respondent; James S., Appellant. (And Another Related Proceeding.)

Calendar Date:March 10, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Ivy M. Schildkraut, Rock Hill, for appellant.
Lindsay H. Kaplan, Kingston, for Amanda T., respondent.
Jane M. Bloom, Monticello, attorney for the child.



Pritzker, J.
Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered January 17, 2020, which, among other things, granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of his child.
Petitioner Amanda T. (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of the subject child (born in 2012). Petitioner Joseph T. (hereinafter the stepfather) married the mother in 2018. In June 2019, petitioners commenced the first proceeding seeking an order permitting the stepfather to adopt the child, alleging that the father's consent was not required. Thereafter, the father commenced the second proceeding seeking visitation with the child. Following a fact-finding hearing, Family Court granted petitioners' application, finding that the father's consent was unnecessary for the adoption to proceed, and dismissed the father's petition for visitation. The father appeals, and we affirm.
Pursuant to Domestic Relations Law § 111 (1) (d), a biological father's consent for the adoption of a child born out of wedlock is required "only if such father shall have maintained substantial and continuous or repeated contact with the child." "Such contact 'must be evinced by (1) financial support by the father of a fair and reasonable sum according to his means and (2) either visiting the child at least monthly when physically and financially able to do so or, if physically or financially unable to visit monthly, by regular communication with the child or the person having custody of the child'" (Matter of Raheem A. v Judith B., 189 AD3d 1716, 1717 [2020], lv denied 36 NY3d 908 [2021], quoting Matter of Lillyanna A. [William ZZ.—John B.], 179 AD3d 1325, 1326 [2020], lv denied 35 NY3d 908 [2020]). "As the statute makes clear, Domestic Relations Law § 111 (1) (d) imposes a dual requirement upon the biological father — satisfaction of both the support and contact/communication provisions — and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Bella FF. [Margaret GG.—James HH.], 130 AD3d 1187, 1187-1188 [2015] [citations omitted]; see Matter of Raheem A. v Judith B., 189 AD3d at 1717).
At the fact-finding hearing, the mother testified that the father has not seen the child, who at the time was almost seven years old, since October 2015, when the child was almost three years old. The mother testified that, prior to this, the father had seen the child only once in 2015 following his release from prison. The mother gave conflicting testimony as to whether, in 2015, the father frequently asked to see the child or only asked to see the child once. The mother also testified that the father has not provided financial support for the child since 2015. The mother testified that the father [*2]has not sent any gifts, letters or cards to the child or called the child. She testified that she has had sole custody of the child since the father did not appear for the court proceeding to adjudicate same.
The father testified that he left the mother before the child was born but returned when the child was two months old to try "to make amends." The father testified that he pleaded guilty to the crime of attempted stalking in 2013 and served 27 months in jail. The father acknowledged that an order of protection was put in place against him in favor of the mother in 2013, which was removed in 2015. He testified that within a few days after being released from prison in 2015, he visited with the child at the grandmother's house, he had frequent contact with the child and that he tried to give the mother what money he could for the child. The father testified that he and the mother stopped communicating in early 2016 and that they had numerous conversations about visiting with the child and spending time with her but that the mother always told him it was not a good time. The father could not specify what month any of these communications took place. The father testified that he moved to Pennsylvania for work at the end of 2016 and did not make any efforts to communicate with or support the child once he moved, and that the last time he saw the child was in 2016. The father testified that he filed a petition for visitation in 2017 after he returned to New York and the mother did not cooperate with his attempts to communicate with the child, but that the petition was dismissed because he did not appear, as he was either in prison or out of town. The father testified that he has not made any child support payments since 2017. The court took judicial notice of a current order of protection against the father in favor of the mother and the child. The father testified that he was in jail for almost the entirety of 2017, with his current prison sentence beginning in December 2017. The father pleaded guilty to the crime of criminal sexual act in the first degree and expects to be released in January 2029, although he denied committing the crime.
We agree with Family Court that the father's consent was unnecessary for the adoption to proceed. The testimony of the mother established that the father had not had contact with the child since 2015, which was four years prior to the commencement of the adoption proceeding. Although there were inconsistencies between when and whether the father made attempts to see the child, Family Court credited the testimony of the mother, "a determination with which we accord deference" (Matter of Raheem A. v Judith B., 189 AD3d at 1719). Testimony also established that the father did not send the child any letters or gifts. The mother testified that she did not receive child support from the father after 2015, and the father did not offer any evidence that he was unable to pay child support (see Matter [*3]of Lillyanna A. [William ZZ.—John B.], 179 AD3d at 1327). Even if this Court were to fully credit the father's testimony, by his own admission he had not attempted to contact the mother or pay support since 2017, two years before the adoption proceeding. There is also no indication that anyone prevented the father from contacting the child or paying support during the relevant time. Significantly, the father's incarceration did not excuse his failure to maintain contact or pay support (see Matter of Raheem A. v Judith B., 189 AD3d at 1719; Matter of Jaedyn U. [Keaysie T.—Patrick U.], 188 AD3d 1532, 1533 [2020]). Therefore, Family Court correctly found that the father's consent to the adoption was not necessary (see Matter of Raheem A. v Judith B., 189 AD3d at 1719; Matter of Lillyana A. [William ZZ.—John B.], 179 AD3d at 1327).
Finally, in light of the final order of adoption, which was entered by Family Court in July 2020, the father's appeal from the dismissal of his visitation petition is moot since he no longer has standing to seek visitation (see Matter of Morgaine JJ., 31 AD3d at 933; cf. Matter of Carrie B. v Josephine B., 81 AD3d 1009, 1010 [2011], appeal dismissed 17 NY3d 773 [2011]).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.