Matter of Saleena E. (Anna F.--Marcus E.) (2025 NY Slip Op 06561)

Matter of Saleena E. (Anna F.--Marcus E.)

2025 NY Slip Op 06561

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-23-1142 CV-23-1613
[*1]In the Matter of Saleena E., an Infant. Anna F. et al., Petitioners; Marcus E., Appellant. (Proceeding No. 1.)
In the Matter of Marcus E., Appellant,
Anna F. et al., Respondents. (Proceeding No. 2.)

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Jane M. Bloom, Monticello, for appellant.
Pamela Doyle Gee, Big Flats, attorney for the child.

Garry, P.J.
Appeals (1) from an amended order of the Family Court of Chemung County (Mary Tarantelli, J.), entered October 21, 2022, which granted petitioners' application, in proceeding No. 1 pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of his child, and (2) from an order of said court, entered June 1, 2023, which dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Marcus E. (hereinafter the father) and respondent Danielle PP. (hereinafter the mother) are the unmarried parents of the subject child (born in 2013). In 2015, while incarcerated, the father consented to an order, entered on the mother's default, granting the child's maternal great-grandmother sole legal and physical custody of the child with visitation to each of the parents as the parties could agree. Shortly thereafter, the child began living with her maternal grandfather and stepgrandmother — Lloyd F. and Anna F. (hereinafter the grandparents). In 2016, while on parole supervision, the father consented to an order granting him, the mother, the grandparents and the great-grandmother joint legal custody of the child, with primary placement to the grandparents and visitation to each of the parents as the parties could agree. The father was reincarcerated for a parole violation a year or two later, and he was released from prison sometime in 2018 or 2019. In March 2022, the grandparents commenced the first of the subject proceedings, seeking an order permitting them to adopt the child.[FN1] Following a fact-finding hearing, Family Court granted their application, finding that the father's consent was unnecessary for the adoption to proceed. The adoption was finalized thereafter. The father later commenced the second proceeding before us, seeking some form of custody of the child. Family Court dismissed that petition with prejudice for lack of standing. The father appeals, maintaining that his consent was necessary for the adoption.[FN2]
A biological father's consent for the adoption of a child born out of wedlock is required "only if such father shall have maintained substantial and continuous or repeated contact with the child as manifested by: (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father's means, and either (ii) the father's visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father's regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child or prevented from doing so by the person or authorized agency having lawful custody of the child" (Domestic Relations Law § 111 [1] [former (d)]; see Matter of Andrew Peter H.T., 64 NY2d 1090, 1091[*2][1985]). The Domestic Relations Law thus "imposes a dual requirement upon the biological father — satisfaction of both the support and contact/communication provisions — and the father's unexcused failure to satisfy either of these requirements is sufficient to warrant a finding that his consent to the proposed adoption is not required" (Matter of Gabriella U. [Amanda T.-James S.], 193 AD3d 1312, 1313 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Raheem A. v Judith B., 189 AD3d 1716, 1717 [3d Dept 2020], lvs denied 36 NY3d 907 [2021], 36 NY3d 908 [2021]).
At the hearing, it was not disputed that the father had not had any contact with the child since 2016, when she was three years old. The father testified that he was generally physically and financially able to visit and communicate with the child, although we acknowledge that, at times, his physical ability to do so may have been limited during his periods of incarceration (see Matter of Lillyanna A. [William ZZ.-John B.], 179 AD3d 1325, 1327 [3d Dept 2020], lv denied 35 NY3d 908 [2020]; Matter of Sergio LL., 269 AD2d 699, 699-701 [3d Dept 2000]). Nevertheless, it is well established that any periods of incarceration did not excuse the father's failure to maintain substantial and continuous or repeated contact with the child (see Matter of Gabriel E. [Barbara F.-Donald E.], 227 AD3d 1147, 1147-1148 [3d Dept 2024]). There is also no indication that the grandparents prevented the father from visiting or communicating with the child, and, although he expressed that he believed that his involvement was unwelcome, this was not sufficient to meet his burden of proof (see Matter of James L., 173 AD2d 941, 943 [3d Dept 1991]). The father admittedly failed to inquire about the child, and it was not until the eve of the fact-finding hearing that he requested visitation. Through the years, he had not sent any cards or gifts or otherwise sought to build a relationship. Notwithstanding Family Court's efforts to recognize and encourage the father's development, and to unify the family, the decision before us hinges on the fact that, as the father acknowledged, he is essentially a "stranger" to the child.[FN3] Thus, although the father was up-to-date on his basic child support obligation, paid through wage deductions, in view of the evidence concerning his lack of contact with the child, we certainly discern no basis upon which to disturb Family Court's conclusion that the father's consent to the child's adoption was not required (see Matter of Ysabel M. [Ysdirabellinna L.-Elvis M.], 137 AD3d 1502, 1504-1505 [3d Dept 2016]; Matter of Asia ZZ. [Henry A.-Jason V.], 97 AD3d 865, 866-867 [3d Dept 2012]).
Clark, Aarons, Lynch and Powers, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: The mother executed an extrajudicial consent to the adoption.
Footnote 2: The father makes no argument with respect to the dismissal of his petition, and any such argument must therefore be deemed abandoned (see Matter of C.M. v Z.N., 230 AD3d 1409, 1411 n 3 [3d Dept 2024]; see also Matter of Gabriella U. [Amanda T.-James S.], 193 AD3d 1312, 1315 [3d Dept 2021]).

Footnote 3: Although not determinative, we note that the attorney for the child supports the grandparent's application (see Matter of Gabriel E. [Barbara F.-Donald E.], 227 AD3d at 1147; Matter of Holly F. v Daniel G., 193 AD3d 1292, 1294 [3d Dept 2021], lvs denied 37 NY3d 904 [2021], 37 NY3d 904 [2021]).